## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

SUSAN LUSH,
12430 Park Potomac Avenue
#512N
Potomac, Maryland 20854

      Plaintiff,

V.

HOWMEDICA OSTEONICS
CORPORATION, d/b/a STRYKER
ORTHOPAEDICS, STRYKER
CORPORATION, and STRYKER
IRELAND LIMITED.

      Defendants.

Case No.



**COMPLAINT AND
JURY TRIAL DEMAND**

---

NOW COMES the Plaintiff, Susan Lush, by and through her undersigned attorneys, complaining against Defendants Howmedica Osteonics Corp. d/b/a Stryker Orthopaedics ("Howmedica"), Stryker Corporation, Stryker Sales Corporation, and Stryker Ireland Limited (hereinafter referred to collectively as "Defendants"), and alleges as follows:

### PARTIES

1.    Plaintiff Susan Lush is a resident of the city of Potomac, County of Montgomery, State of Maryland.

2.    Plaintiff Susan Lush was implanted with a Stryker LFIT V40™ femoral head and a Stryker Accolade™ Stem (collectively referred to as "HIP SYSTEM") in the District of Columbia.

3.    Plaintiff Susan Lush suffered and continues to suffer injuries as a result of the failure of the HIP SYSTEM, including undergoing a surgery to remove the defective HIP SYSTEM, in the

District of Columbia.

4.     Defendant Howmedica is a corporation organized and existing under the laws of New

Jersey with its principal place of business located at 326 Corporate Drive, Mahwah, NJ

07430. Defendant developed, designed, manufactured, marketed, distributed, and sold

the HIP SYSTEM implanted in Plaintiff.  At all times relevant to this action, Defendant

conducted business throughout the United States, including the District of Columbia.

Defendant Howmedica is a wholly owned subsidiary of parent corporation, Stryker

Corporation.

5.     Defendant Stryker Corporation is the parent corporation organized and existing under the

laws of Michigan, with its principal place of business in Kalamazoo, Michigan.

Defendant does business throughout the world and throughout the United States,

including in the District of Columbia.  Stryker holds itself out as "one of the world's

leading medical technology companies and is dedicated to helping healthcare

professionals perform their jobs more efficiently while enhancing patient care.  Stryker

provides innovative orthopaedic implants as well as state-of-the-art medical and surgical

equipment to help people lead more active and more satisfying lives."  www.stryker.com

6.     Defendant Stryker Sales Corporation is a corporation organized and existing under the

laws of Michigan, having its principal place of business located at 2825 Airview

Boulevard, Kalamazoo, Michigan 49002 and conducts business throughout the United

States, including the District of Columbia.

7.     Defendant Stryker Sales Corporation is a wholly owned subsidiary of Stryker

Corporation.

8.     Defendant Stryker Ireland Limited is a foreign corporation that is also a wholly owned

subsidiary of Stryker Corporation.

9.   At all relevant times, Stryker Ireland Limited conducted research, design and/or manufacturing of the HIP SYSTEM at issue in this lawsuit.

10.  Upon information and belief, at all times herein mentioned, the employees of Defendants, their subsidiaries, affiliates, and other related entities, as well as the employees of the Defendants' subsidiaries, affiliates, and other related entities, were the agents, servants and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendants, such allocations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendants committed, knew of, performed, authorized, ratified and/or directed such transactions on behalf of Defendants while actively engaged in the scope of their duties.

11.  This products liability lawsuit seeks compensatory damages on behalf of Susan Lush, who was implanted with an artificial hip replacement system using components known as the Accolade™ Stem and LFIT V40™ Femoral Head ("HIP SYSTEM"). These are components of the HIP SYSTEM that the Defendants designed, manufactured, marketed, sold and distributed.

## JURISDICTION AND VENUE

12.  This action is properly before the Court because complete diversity of citizenship exists between Plaintiff and Defendants. In addition, the amount in controversy claimed by Plaintiff exceeds $75,000.00. As a result, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a).

13.  Defendants are subject to the *in personam* jurisdiction of this Court, and venue is therefore proper herein pursuant to 28 U.S.C. § 1391, because Defendants did (and does) business within the District of Columbia and has had continuous and systematic contacts with the District of Columbia, has consented to jurisdiction in the District of Columbia, and/or committed a tort in whole or in part in the District of Columbia against Plaintiff as more fully set forth herein. Upon information and belief, Defendants also advertised in this District, made material omissions and representations in this District, and breached warranties in this District.

14.  This products liability lawsuit seeks compensatory damages on behalf of Susan Lush, who was implanted with an artificial hip replacement system using components known as the ACCOLADE™ Stem and LFIT V40™ Femoral Head ("HIP SYSTEM") in the District of Columbia. These are components of the HIP SYSTEM that the DEFENDANTS designed, manufactured, marketed, sold and distributed in the District of Columbia.

## **FACTUAL ALLEGATIONS**

15.  The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (ball like structure at the top of the femur), rotating within the acetabulum (a cuplike structure at the bottom of the pelvis). In a healthy hip, both the femur and the acetabulum are strong, and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids. Over time, age and wear break down the cartilage. This forces the bone of the femur to rub directly against the bone of the acetabulum, and it can cause severe pain and immobility.

16.  A total hip replacement replaces the body's natural joint with an artificial one, usually

made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem, (2) a femoral head, (3) a liner and (4) an acetabular shell. The surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball which is fixed on top of the femoral stem. The acetabular shell fits into the hip socket, with the liner locked into the shell. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

17.     The HIP SYSTEM implant design is more prone to in vivo corrosion and mechanical wear when implanted into a human being than hip devices manufactured by other companies.

18.     The corrosion and wear debris produced by the HIP SYSTEM causes the surrounding tissue to become damaged and necrotic.

19.     The HIP SYSTEM and related components were approved under a process by the Food and Drug Administration (hereinafter referred to as the "FDA") known as a 510(k). A 510(k) medical device does not have to go through the rigors of a clinical study to gain approval by the FDA.

20.     In or around March 2001, Stryker received clearance from the FDA to market the LFIT Anatomic v40 Femoral Head.

21.     LFIT stands for "Low Friction Ion Treatment," and this technology is marketed to "enhance the material properties of CoCr to reduce frictional forces against ultra-high-molecular-weight polyethylene (UHMWPE) surfaces."

22.     Defendants advertised that an LFIT stimulates the joint by allowing increased lubrication between the components and LFIT ™ heads demonstrated a 28% reduction in linear in

100 patients at a minimum 3-year follow up.

23.     In or around March 2000, Stryker released its Accolade TMZF Hip Stem.

24.     According to Stryker's materials, the Accolade TMZF Stem was developed to maximize
        a patient's hip range of motion increase stability, and prevent dislocation. These materials
        also state that the Accolade TMZF Hip Stem is designed to be used with V40 Femoral
        Heads

25.     Defendants claim in their promotional materials that the TMZF alloy "provides the
        opportunity to reduce neck geometry thus optimizing the available range of motion while
        maintaining strength." Additionally, Stryker states that with the "unique composition of
        titanium, molybdenum, zirconium, and iron, it achieves a superior combination of
        flexibility, strength, and notch resistance when compared to other allows used in
        orthopedic implants."

26.     The Accolade TMZF Stem combines the material characteristics of TMZF (Ti- 12Mo-
        6Zr-2Fe) with a Circumferential Plasma Titanium plasma spray coating and PureFix HA.
        The LFIT Anatomic V40 Femoral Head was commonly used with the Accolade TMZF
        Hip Stem, which is made from chromium/cobalt alloy. Defendants claim that laboratory
        testing demonstrates the compatibility of these materials without concern for fretting and
        corrosion.

27.     Despite Defendants' claims, this material combination has been reported to cause
        corrosion. For decades, scientists have reported the occurrence of accelerated fretting and
        corrosion issues when dissimilar metals are combined. In their marketing and sale of the
        device, Defendants represented and warranted that proprietary materials alleviate
        concerns for this problem.

28. Furthermore, in 2012, Stryker recalled its Rejuvenate and ABG II modular hip systems. These two systems employed the same TMZF titanium metal in the femoral stem. The modular neck of both recalled devices were manufactured from chromium/cobalt. These devices were recalled after reports surfaced indicating excessive device failure due to fretting and corrosion at the taper junction where these dissimilar metals were joined. Patients in whom Stryker Rejuvenate and ABG II hip stems had been implanted were experiencing device failure, symptoms and diagnostic findings similar to Plaintiff, Susan Lush. Information disseminated by Stryker at or about the time of the recall cited this failure mechanism as the reason for the recall

29. Since the recall, revision rates for the Rejuvenate and ABG II have been reported to exceed 50% in a very short period of time.

30. Defendants did not conduct a clinical trial of the HIP SYSTEM before putting it on the market for use in patients in the United States.

31. An article entitled, "Raised levels of metal ions in the blood in patients who have undergone uncemented metal-on-polyethylene Trident-ACCOLADE total hip replacement" was published in January of 2014. The authors of the article found high concentrations of metal in the blood of patients that had an ACCOLADE™ and V40™ devices implanted in their body. The authors discontinued use of the products and notified DEFENDANTS of the results. DEFENDANTS have not notified patients of the results of this study or the dangers of the ACCOLADE™ and V40™ devices.

32. Stryker issued a Class 2 Device Recall of a large number of the Stryker LFIT Anatomic V40 chromium/cobalt heads. The Recall notice was posted on the FDA website on November 9, 2016, which states that the reason for the recall is "Stryker received several

complaints describing incidences of harm secondary to taper lock failure for specific lots of numerous catalog numbers of LFIT Anatomic CoCr Femoral Heads."

33.    The recall cites trunnion failure, metal wear, adverse tissue reaction, and the need for revision surgery as causes for recalling the femoral heads. Ms. Lush suffered each of the above and the combination resulted in the need for revision surgery due to the failure of her LFIT Anatomic V40 head in conjunction with the Accolade TMZF Stem, the HIP SYSTEM.

34.    On or about August 27, 2007, Plaintiff underwent right total hip arthroplasty at Sibley Memorial Hospital in Washington, DC as a result of advanced right hip osteoarthritis. Defendants' HIP SYSTEM was implanted into the right hip of Susan Lush.

35.    At all relevant times and before the implantation of the HIP SYSTEM in the Plaintiff, Defendants knew that the HIP SYSTEM was defective and harmful to consumers.

36.    At all relevant times and before the implantation of the HIP SYSTEM in the Plaintiff, Defendants had regular and frequent communications from surgeons who had implanted the HIP SYSTEM regarding failures and complications of the HIP SYSTEM.

37.    On or about August 07, 2014, certain components of Plaintiff's HIP SYSTEM were removed and replaced at Sibley Memorial Hospital in Washington, DC with new components. Once the LFIT V40 Head was removed, the surgeon found extensive black corrosion around the trunnion area around the femoral stem. A greater trochanteric fracture was also identified. The post-procedure diagnosis was "[d]isplaced fracture, right greater trochanter secondary to tendinosis with a metal reaction. Loosening right acetabular components secondary to foreign body reaction from the trunnionosis."

38.    Subsequent to the August 7, 2014 revision surgery, Plaintiff Susan Lush was forced to an

additional surgery at Sibley Memorial Hospital in Washington, DC to her right hip stemming from the failure of the HIP SYSTEM.

39.   As a direct and proximate result of Defendants' wrongful conduct, Susan Lush was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, Susan Lush was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which she is entitled to compensatory damages in an amount to be proven at trial.

## CLAIMS FOR RELIEF

## COUNT ONE – STRICT PRODUCTS LIABILITY
## MANUFACTURING DEFECT

40.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

41.   At all times material hereto, the Defendants were the manufacturer, distributor, seller, and/or supplier of one or more defective components used in Susan Lush's body.

42.   The HIP SYSTEM or components manufactured, sold, distributed, supplied, and/or placed in the stream of commerce by the Defendants were defective in manufacture and construction when they left the hands of the Defendants in that they deviated from product specifications and/or applicable requirements for these medical devices and posed a serious risk of injury and/or death.

43.   Defendants knew or reasonably should have known that the HIP SYSTEM, as

manufactured or constructed, was defective and posed an unreasonable risk of harm to individuals, including Susan Lush, who used the HIP SYSTEM as intended by Defendants.

44.   As a direct and proximate result of Defendants' wrongful conduct, Susan Lush was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, Susan Lush was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

## COUNT TWO – STRICT PRODUCTS LIABILITY
## DESIGN DEFECT

45.   Susan Lush adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows: Poor  design  of  the bore  of  the  LFIT  V40  Heads  such  that  it resulted in  taper  lock  failure,  micro-motion  of  the  Accolade  trunnion  within the LFIT V40 bore, corrosion and fretting;

46.   The HIP SYSTEM, as manufactured and supplied by DEFENDANTS, was defective in design and formulation in that, when it left the hands of the DEFENDANTS, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary customer would expect and/or failed to comply with applicable requirements for these medical devices.

47.   The foreseeable risks associated with the design or manufacture of the HIP SYSTEM include, but are not limited to, the fact that the design or manufacture of the HIP

SYSTEM is more dangerous than a reasonably prudent consumer would expect when used in its intended manner and/or it failed to comply with applicable requirements. The HIP SYSTEM design results in an increased risk of injury due to device failure.

48.     The HIP SYSTEM was not reasonably safe as intended to be used;

49.     The HIP SYSTEM had an inadequate design for the purposes of hip replacement;

50.     The HIP SYSTEM contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

51.     The HIP SYSTEM's unstable and defective design resulted in a hip prosthesis, which had risks which exceeded the benefits of the medical device;

52.     The HIP SYSTEM's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

53.     The HIP SYSTEM failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the WENDELL YAEGER to an unreasonable risk of harm beyond that contemplated by an ordinary person;

54.     The HIP SYSTEM was insufficiently tested; and

55.     The warning to Susan Lush's implanting physicians about the dangers the HIP SYSTEM posed to consumers including Susan Lush were inadequate. The inadequacy of Defendant's warnings includes, but are not limited to, the following:

    a.   Insufficient to alert Susan Lush and her physicians as to the risk of adverse events and/or reactions associated with the HIP SYSTEM, subjecting Susan Lush to risks which exceeded the benefits of the HIP SYSTEM;

    b.   Contained misleading warnings emphasizing the efficacy of the HIP

11

SYSTEM while downplaying the risks associated with it, thereby making use of the HIP SYSTEM more dangerous than the ordinary consumer would expect;

c. Contained insufficient and/or incorrect warnings to alert consumers, including Susan Lush, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the HIP SYSTEM;

d. Did not disclose that it was inadequately tested;

e. Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the HIP SYSTEM;

f. Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers;

g. Defendants failed to adequately design and manufacture the HIP SYSTEM to ensure that it would not corrode, erode, deteriorate, disassociate, fret and/or fracture in the patient;

h. Defendants failed to adequately test the HIP SYSTEM to ensure that it would not corrode, erode, deteriorate, disassociate, fret and/or fracture in the patient; and

i. Defendants failed to promptly act upon reports of early failure such that the HIP SYSTEM continued to be implanted in unknowing patients by surgeons well after it should have been recalled or sales suspended;

56.     As a direct and proximate result of the defective design of the Defendants' HIP SYSTEM

or components and Susan Lush's use of the HIP SYSTEM as designed, manufactured, sold, supplied, and introduced into the stream of commerce by Defendants and/or the Defendants' failure to comply with applicable requirements, Susan Lush suffered serious permanent physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

57.   As a direct and proximate result of Defendants' wrongful conduct, Susan Lush was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, Susan Lush was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

## COUNT THREE
## STRICT PRODUCTS LIABILITY: FAILURE TO WARN

58.   Susan Lush adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

59.   At all times material hereto, the Defendants were the manufacturer, designer, distributor, seller, and/or supplier of the HIP SYSTEM and sold the HIP SYSTEM knowing they would then be implanted in patients in need of a hip prosthesis.

60.   The HIP SYSTEM was expected to, and did, reach the Susan Lush without substantial change or adjustment in its condition as designed, manufactured, and sold by the Defendants.

61.     The HIP SYSTEM as designed, developed, tested, manufactured, marketed, sold, and/or placed in the stream of commerce by Defendants was in a dangerous and defective condition when it left the hands of the Defendants and posed a threat to any user of the device.

62.     Susan Lush was and is in the class of persons that Defendants considered, or should have considered, to be subject to the harm caused by the defective nature of the HIP SYSTEM.

63.     The HIP SYSTEM or components were implanted and used in the manner for which it was intended. Susan Lush's use of the HIP SYSTEM as intended by Defendants resulted in severe permanent physical, emotional, financial, and other injuries to the Susan Lush.

64.     Defendants knew or should have known that the HIP SYSTEM as designed, developed, tested, manufactured, marketed, sold, and/or placed in the stream of commerce by Defendants was in a dangerous and defective condition when it left the hands of the Defendants and posed a threat to any user of the HIP SYSTEM.

65.     Defendants failed to provide adequate and timely warnings or instructions regarding the HIP SYSTEM and its known defects.

66.     As a direct and proximate result of Defendants' wrongful conduct, Susan Lush was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, Susan Lush was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which she is entitled to compensatory damages in an amount to be proven at trial.

## COUNT FOUR – NEGLIGENCE

67.   Susan Lush adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

68.   Defendants designed, manufactured, marketed, detailed, and advertised, both to physicians and consumers, the HIP SYSTEM.

69.   As a result, Defendants had a duty to perform each of these functions reasonably and with reasonable and due care for the safety and well-being of patients in whom the devices would be implanted.

70.   Defendants failed to use reasonable and due care for the safety and well-being of those in whom the HIP SYSTEM would be implanted and is, therefore, negligent in the following respects:

71.   The HIP SYSTEM was not reasonably safe as intended to be used;

72.   The HIP SYSTEM had an inadequate design for the purposes of hip replacement;

73.   The HIP SYSTEM contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

74.   The HIP SYSTEM's unstable and defective design resulted in a hip prosthesis, which had risks which exceeded the benefits of the medical device;

75.   The HIP SYSTEM's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

76.   The HIP SYSTEM failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the Susan Lush to an unreasonable risk of harm beyond that contemplated by an ordinary person;

77.    The HIP SYSTEM was insufficiently tested; and

78.    The warning to Susan Lush's implanting physicians about the dangers the HIP SYSTEM

posed to consumers including Susan Lush were inadequate. The inadequacy of

Defendant's warnings includes, but are not limited to, the following:

a.  Insufficient to alert Susan Lush and her physicians as to the risk of adverse

events and/or reactions associated with the HIP SYSTEM, subjecting Susan

Lush to risks which exceeded the benefits of the HIP SYSTEM;

b.  Contained misleading warnings emphasizing the efficacy of the HIP

SYSTEM while downplaying the risks associated with it, thereby making use

of the HIP SYSTEM more dangerous than the ordinary consumer would

expect;

c.  Contained insufficient and/or incorrect warnings to alert consumers, including

Susan Lush, through their prescribing physicians regarding the risk, scope,

duration, and severity of the adverse reactions associated with the HIP

SYSTEM;

d.  Did not disclose that it was inadequately tested;

e.  Failed to convey adequate post-marketing warnings regarding the risk,

severity, scope, and/or duration of the dangers posed by the HIP SYSTEM;

f.  Failed to contain instructions sufficient to alert consumers to the dangers they

posed, and to give them the information necessary to avoid or mitigate those

dangers;

g.  Defendants failed to adequately design and manufacture the HIP SYSTEM to

ensure that it would not corrode, erode, deteriorate, disassociate, fret and/or

fracture in the patient;

    h.   Defendants failed to adequately test the HIP SYSTEM to ensure that it would not corrode, erode, deteriorate, disassociate, fret and/or fracture in the patient; and

79. Defendants failed to promptly act upon reports of early failure such that the HIP SYSTEM continued to be implanted in unknowing patients by surgeons well after it should have been recalled or sales suspended;

80. The above conduct illustrates Defendants' failure to exercise reasonable and appropriate care. It was foreseeable that such negligence would lead to premature device failure as well as severe, permanent, debilitating injury to patients, including Susan Lush.

81. As a direct and proximate result of the Defendants' negligence, Susan Lush has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

82. As a direct and proximate result of Defendants' wrongful conduct, Susan Lush was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, Susan Lush was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

## COUNT FIVE – NEGLIGENCE PER SE

83.   Susan Lush adopts and incorporates by reference all the foregoing language of this

Complaint as if fully set forth herein and further states as follows:

84.   Defendants have an obligation to not violate the law in the manufacture, design, testing,

assembly, inspection, labeling, packaging, supplying, marketing, selling, advertising,

preparing for use, warnings of the risks and dangers of the HIP SYSTEM, and otherwise

distributing the HIP SYSTEM.

85.   Defendants' acts and omissions constitute an adulteration, misbranding, or both, and

constitute a breach of duty subjecting Defendants to civil liability for all damages arising

therefrom, under theories of negligence per se.

86.   Susan Lush and her implanting surgeon, as a purchaser of the HIP SYSTEM, is within

the class of persons the laws and regulations are designed to protect and Susan Lush's

injuries are the type of harm these laws and regulations are designed to prevent.

87.   As a direct and proximate result of Defendants' wrongful conduct, Susan Lush was

caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering

in body and mind; to suffer device-related complications; to expend money for medical

care in the past and in the future; furthermore, Susan Lush was unable to and will in the

future be unable to attend to her normal affairs and duties for an indefinite period of time

sustained and will continue to sustain severe physical injuries, severe emotional distress,

mental anguish, economic losses and other damages for which she is entitled to

compensatory damages in an amount to be proven at trial.

## COUNT SIX – BREACH OF WARRANTIES

88.   Susan Lush adopts and incorporates by reference all the foregoing language of this

18

Complaint as if fully set forth herein and further states as follows:

89.   Susan Lush reserves the right to present evidence in support of the claim which is not

presently in her possession, but which is not necessarily limited to: Instruction for Use

Manuals; all written material or information provided on and/or within any and all

packaging associated with Susan Lush's device; manufacturer's labels, package inserts;

Adverse Event Reports; clinical trial data; medical literature; medical research findings

and opinions; medical publications; advertisements; sales and promotional materials;

internal memoranda, emails, communications and databases; sales, prescription and

adverse event report databases; and communications from Defendants in this action,

including Defendants' employees, officers, directors, agents, representatives, contractors

and business associates, to the public, medical community, Susan Lush's implanting

surgeon and Susan Lush. Upon information, knowledge and belief, Susan Lush alleges

the documents, instruments and/or evidence stated above are in the possession of

Defendants.

90.   Susan Lush, by and through her implanting orthopaedic surgeon, used the HIP SYSTEM

for its intended purpose.

91.   Contrary to the express and implied warranties, at the time the Defendants marketed, sold

and/or distributed the HIP SYSTEM, it was not of merchantable quality or safe for their

intended use as described above.

92.   As a direct and proximate result of Defendants' wrongful conduct, Susan Lush was

caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering

in body and mind; to suffer device-related complications; to expend money for medical

care in the past and in the future; furthermore, Susan Lush was unable to and will in the

future be unable to attend to her normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which she is entitled to compensatory damages in an amount to be proven at trial.

## COUNT SEVEN – NEGLIGENT MISREPRESENTATION

93.     Susan Lush adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

94.     At the time Defendants manufactured, designed, marketed, sold and distributed the HIP SYSTEM for use by Susan Lush, Defendants knew or should have known of the use for which the HIP SYSTEM was intended and the serious risks and dangers associated with such use of the HIP SYSTEM.

95.     Defendants owed a duty to treating physicians and to the ultimate end-users of the HIP SYSTEM, including Susan Lush, to accurately and truthfully represent the risks of the HIP SYSTEM. Defendants breached that duty by misrepresenting and/or failing to adequately warn Susan Lush's physicians, the medical community, Susan Lush, and the public about the risks of the HIP SYSTEM, which Defendants knew or in the exercise of diligence should have known.

96.     As a direct and proximate result of Defendants' wrongful conduct, Susan Lush was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, Susan Lush was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress,

mental anguish, economic losses and other damages for which she is entitled to compensatory damages in an amount to be proven at trial.

## COUNT EIGHT –
## VIOLATION OF THE D.C. CONSUMER PROTECTION PROCEDURE ACT, D.C. CODE § 28-3901 ET SEQ.

97.   Susan Lush adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

98.   Plaintiff is a "consumer" as defined in D.C. Code § 28-3901(2), in that Plaintiff purchased or received, other than for purposes of resale, goods from the Defendants.

99.   The Defendants are "merchants" as defined in D.C. Code § 28-3901(3), in that they sold, either directly or indirectly, consumer goods to Plaintiff in the ordinary course of business.

100.   The Defendants' actions in marketing, advertising, and otherwise making public representations about the HIP SYSTEM constitute "trade practices" as defined by D.C. Code § 28-3901(6), as they were actions that created, altered, repaired, furnished, made available, provided information about, or, directly or indirectly, solicited or offered for or effectuated a sale, lease, or transfer of consumer goods.

101.   At all relevant times, the Defendants knew or should have known of the unreasonably dangerous nature of the HIP SYSTEM.

102.   At all relevant times, Defendants, through their labeling and marketing of the HIP SYSTEM, intentionally misrepresented material facts in order to mislead consumers that the HIP SYSTEM was safe for use to induce consumers to purchase the HIP SYSTEM. Defendants, through their labeling, advertisements, and public representations associated with the HIP SYSTEM, since the HIP SYSTEM's introduction into the marketplace,

have stated that the HIP SYSTEM was safe for use in a total hip arthroplasty procedure. The Defendants' misrepresentations constitute unlawful trade practices under D.C. Code §§ 28-3904(a), (d), and (e).

103.    At all relevant times, Plaintiff and her physicians acted in reasonable reliance upon the Defendants' unlawful trade practices, and had the Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or received the HIP SYSTEM.

104.    As a direct and proximate result of the unlawful trade practices of the Defendants, in violation of D.C. Code §28-3901, *et seq.*, Plaintiff has suffered and will continue to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

WHEREFORE, Susan Lush, prays for judgment against Defendants, in a sum in excess of $75,000, together with interests and costs of this action and such further and other relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

DATED this 4th day of August, 2017          /s/ Richard S. Lewis
                                            **HAUSFELD**
                                            Richard S. Lewis (DC #414261)
                                            1700 K Street, NW
                                            Suite 650
                                            Washington, DC 20006
                                            P: (202) 540-7200
                                            F: (202) 540-7201
                                            rlewis@hausfeld.com


                                            /s/ Laura L. Pittner
                                            **GOLDENBERGLAW, PLLC**

Laura L. Pittner (MN #0393342)
800 LaSalle Avenue, Suite 2150
Minneapolis MN 55402
P: (612) 333-4662
F: (612) 367-8107
lpittner@goldenberglaw.com

*ATTORNEYS FOR PLAINTIFF*